**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CATHY CHESSMORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-1642 |
| | § | |
| WAL-MART STORES, INC., WAL-MART | § | |
| STORES TEXAS, L.P., WAL-MART | § | |
| ASSOCIATES, INC., and STANLEY | § | |
| ACCESS TECHNOLOGIES, LLC, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

The plaintiff, Cathy Chessmore, filed this personal injury suit against Wal-Mart Stores, Inc.,

Wal-Mart Stores Texas, L.P., and Wal-Mart Associates, Inc. (together, "Wal-Mart"), and Stanley

Access Technologies, LLC.  Chessmore alleges that she injured her shoulder when an automatic

door at the Wal-Mart store in College Station, Texas closed on her arm in February 2007.

Chessmore initially sued Wal-Mart on premises liability and negligence claims.  (Docket Entry No.

1).  Chessmore later amended her complaint to add Stanley as a defendant, alleging that it had been

negligent in maintaining and repairing the door.  (Docket Entry No. 21).  Both defendants have

moved for summary judgment.  Wal-Mart argues that undisputed facts in the record shows that as

a matter of law, it had no reason to believe that the door was malfunctioning when the incident

occurred.  (Docket Entry No. 29).  Stanley argues that limitations bars Chessmore's claim.  (Docket

Entry No. 37).  Chessmore has responded to both motions, (Docket Entry Nos. 34, 39), and Stanley

has replied, (Docket Entry No. 40).

Based on the pleadings; the motions, responses, and reply; the factual record; and the applicable law, this court grants both defendants' summary judgment motions and, by separate order, enters final judgment. The reasons for these rulings are explained below.

## I.   Background

The relevant facts are largely undisputed. On February 24, 2007, Cathy Chessmore went to the Wal-Mart store in College Station. (Docket Entry No. 21 at 1). The store has one entrance in the front with two sets of automatic doors, one exterior and one interior. The exterior doors are closest to the parking lot and open into a vestibule. The interior doors open into the store. (Docket Entry No. 29, Ex. A, ¶ 4). Chessmore testified in her deposition that as she entered the store and passed through the exterior doors, the right-side door rapidly closed. She was able to lift her arm in response and the door hit her on the forearm. (Docket Entry No. 34, Ex. 4, Chessmore Depo. at 37-43). Chessmore alleges that, after being hit, she experienced pain in her right shoulder. Chessmore obtained medical treatment. She seeks damages for the injury, the medical expenses, and the pain she experienced. (Docket Entry No. 21 at 2, 4).

The record shows that on February 24, before Chessmore was injured, Wal-Mart's assistant store manager, Belinda Sandle  entered through both sets of doors four times: at 8:00 a.m., at 1:00 p.m., at some time between 2:00 p.m. and 3:00 p.m., and again at 5:00 p.m. She "noticed no problem with the functionality of the doors" and found that  "[b]oth sets of doors were operating properly each time" she walked through them. (Docket Entry No. 29, Ex. A, ¶¶ 5, 6). No employee or customer complained about the doors that day before Chessmore was injured.  (*Id.*, ¶ 7).

On February 23, the day before Chessmore visited the store, Stanley had been on site to perform repairs to the interior set of automatic doors. Wal-Mart had contacted Stanley on February

19 because the interior doors were not opening properly.  It is unclear if the doors were opening too slowly or failing to open.  Before Stanley came, Wal-Mart propped the interior doors open by tying them to the adjacent handrails.  (Docket Entry No. 34, Ex. 6, Sandle Depo. at 18-19).  Stanley came to the store on February 21 and February 23 and repaired the interior doors.  Both Stanley and Wal-Mart believed that the problem had been corrected and the interior doors were working properly.  No problem was reported with the exterior doors.  (Docket Entry No. 34, Ex. 3).

Stanley had also been to the store the week before to correct "grinding" on a manual door next to the automatic doors Chessmore used.  (*Id.*, Docket Entry No. 34, Ex. 6, Sandle Depo. at 18-19).  In November 2007, Stanley had been called to the store to inspect the automatic doors and service them if necessary.  (Docket Entry No. 34, Ex. 2).  It is unclear whether Stanley did any service work on the doors.  Stanley's technician did, however, inform Wal-Mart that the doors were working properly.  (*Id.*).

Immediately after the door struck her, Chessmore complained to Wal-Mart personnel, who photographed her arm, discussed the incident with her, and filed an incident report.  (*Id.*, Ex. 1, Ex.4, Chessmore Depo. at 43-46).  Wal-Mart contacted Stanley on February 24, 2007 to request a "claim investigation."  Stanley came to the store on April 4, 2007, inspected the exterior doors, and found that they were "working correctly at this time."  (*Id., Ex. 3*).

On April 10, 2008, Chessmore sued Wal-Mart in Texas state court.  Wal-Mart filed a notice of removal on May 22, 2008.  (Docket Entry No. 1).  The parties have conducted discovery, including making initial disclosures, producing documents, and taking depositions.  Chessmore amended her complaint on March 2, 2009, adding Stanley as a defendant.  (Docket Entry No. 21).  On May 15, 2009, this court granted Chessmore's unopposed motion for leave to file her First

Amended Complaint.  (Docket Entry No. 30).  Stanley answered the complaint but the next day moved for summary judgment, arguing that the statute of limitations barred the claims against it. (Docket Entry Nos. 36, 37).  Chessmore responded, (Docket Entry No. 39), and Stanley replied, (Docket Entry No. 40).  Wal-Mart has also moved for summary judgment.  (Docket Entry No. 29). Chessmore has responded.  (Docket Entry Nos. 33, 34).

## II.    The Legal Standard for Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).  If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by " 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F .3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

## III.    Analysis

### A.    Stanley's Motion for Summary Judgment

Stanley argues that the undisputed facts in the record show that, as a matter of law, Chessmore's negligence claim is barred by limitations.  (Docket Entry No. 37).   Under Texas law, which applies to this diversity suit, personal-injury claims must be brought within two years after the claims accrue. TEX. CIV. PRAC. & REM. CODE. § 16.003.  "For purposes of the application of limitation statutes, a cause of action can generally be said to accrue when the wrongful act effects an injury, regardless of when the plaintiff learned of such injury." *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990) (citing *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex. 1977).

Chessmore was injured on February 24, 2007.  She did not add Stanley as a defendant until March 2, 2009, (Docket Entry No. 21), and did not serve Stanley until June 9, 2009, (Docket Entry No. 37, Ex. C at 2).  Under the ordinary rule, Chessmore's claim would be time-barred because the limitations period expired on February 24, 2009.

5

Chessmore invokes the discovery rule.  Under the discovery rule, a cause of action does not accrue – and the statute of limitations is tolled – until the "plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injury."  *Moreno*, 787 S.W.2d at 351 (citing *Weaver v. Witt*, 561 S.W.2d 792, 793-94 (Tex. 1977)).  The Texas Supreme Court has applied the discovery rule when "'the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable.'" *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996).  "An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence."  *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996).  Cases in which the injury is "inherently undiscoverable" include medical malpractice and legal malpractice.  In such cases, the nature of the injury, not the involvement of a particular defendant, makes the injury "inherently undiscoverable."  *See Gaddis v. Smith*, 417 S.W.2d 577. 580 (Tex. 1967) (applying discovery rule in medical malpractice case); *FDIC v. Shrader & York*, 991 F.2d 216, 221 (5th Cir. 1993) (the discovery rule applies in legal malpractice cases, in which a fiduciary relationship exists and "clients often lack the expertise to recognize a lawyer's negligence.").  The discovery rule may also apply to fraud claims if the defendant has concealed the fraud and prevented the plaintiff from discovering the injury earlier.  *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988).[1]

---

[1]  Contrary to Chessmore's suggestion, the relevant question in deciding whether to apply the discovery rule is not whether "the matter is not public knowledge." (Docket Entry No. 39 at 4).  The case Chessmore cited for that principle, *Wheeler v. Methodist Hospital*, 95 S.W.3d 628, 637 (Tex. App.–Houston [1st Dist.] 2002, no pet.), describes the "not public knowledge" test as the applicable standard for deciding whether the discovery rule should apply in defamation cases.  Cases in which defamatory statements are not public are similar to concealed fraud in that the plaintiff is prevented from learning of the existence of the injury. Nothing prevented Chessmore from knowing her injury existed at its inception.

Because Chessmore seeks to benefit from the discovery rule, she "bear[s] the burden of proving and securing favorable findings thereon." *Woods*, 769 S.W.2d at 518. In Texas state courts, on a summary judgment motion, the burden shifts to the moving party to negate the discovery rule by showing the absence of any fact issue as to when the plaintiff discovered or should have discovered its claim. *Id.* at 518 n.2. But the Fifth Circuit has found that to be a procedural rule. *Shrader & York*, 991 F.2d at 220. In federal court, the nonmoving party still "[bears] the burden of producing some summary judgment evidence in support of its discovery rule argument." *Id.* Chessmore must bring forward evidence showing that the discovery rule should apply.

Chessmore has not identified or submitted evidence in the record giving rise to a disputed fact issue material to determining whether the discovery rule applies. The undisputed facts show that Chessmore's injury from the door was readily apparent on the date it occurred. The discovery rule does not apply to extend limitations if the injury is apparent when it occurs but the plaintiff does not know the identity of all the potential defendants. *See Rojas v. Phillips Properties, Inc.*, 828 S.W.2d 18, 22 (Tex. App.–Corpus Christi 1991, no writ) (holding that the discovery rule did not apply when the plaintiff was injured in an accident, sued the intoxicated driver, took the driver's deposition, then tried to add the liquor store that had sold alcohol to the driver as another defendant more than two years after the accident).

Moreover, no evidence shows that Stanley's involvement was "by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *See S.V.*, 933 S.W.2d at 7. To the contrary, Stanley's role in repairing the doors was not concealed or hidden. On January 22, 2009, before the limitations period expired, Chessmore received documents in discovery showing that Stanley had repaired the doors. (Docket Entry No. 37, Ex. E).

Chessmore contends that although she received those documents in January showing Stanley's repair work, she did "not have notice of Stanley's involvement as a potential defendant prior to February 27, 2009." That was when Wal-Mart supplemented its disclosures again "and included production of a CD/DVD containing electronically stored documents relating to Stanley." (Docket Entry No. 39 at 3). This argument fails as a matter of law. At the latest, Chessmore had actual notice of Stanley's involvement when Wal-Mart made the January 22, 2009 disclosures, within the limitations period. But because the discovery rule does not apply, the date of Chessmore's actual or constructive notice is irrelevant.[2]

Chessmore does not argue that her claim against Stanley should relate back to the date of the original state-court petition. Rule 15(c)(1) of the Federal Rules of Civil Procedure would foreclose that argument. Rule 15(c)(1) provides that a claim asserted after limitations may relate back to the earlier filed complaint when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

---

[2] Stanley argues that, even if the discovery rule might apply, Chessmore waived her right to rely on it by failing to plead the discovery rule in her First Amendment Complaint. (Docket Entry No. 37 at 4 n.3). Under *Woods*, 769 S.W.3d at 518, which Stanley cites, "[a] party seeking to avail itself of the discovery rule must therefore plead the rule, either in its original [complaint] or in an amended or supplemented [complaint] in response to defendant's assertion of the defense." In her response to Stanley's summary judgment motion, Chessmore argued that statements in her motion for leave to amend were sufficient to preserve her right to argue for the discovery rule. She has also asked for leave to further amend her complaint to plead the discovery rule. (Docket Entry No. 39 at 5). Because the discovery rule does not apply, it is unnecessary to address these arguments or Chessmore's request for leave to amend.

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1).  Rule 15(c)(1)(A) is not satisfied because the Texas statute does not provide for relation-back when a new party is sought to be added.  *See* TEX. CIV. PRAC. & REM. CODE § 16.068; *Alexander v. Turtur & Assoc., Inc.*, 146 S.W.3d 113, 121 (Tex. 2004) ("Ordinarily, an amended pleading adding a new party does not relate back to the original pleading.").  Rule 15(c)(1)(B) does not apply because Stanley was not named in the original complaint.  Rule 15(c)(1)(C) does not apply because there is no evidence that within the applicable time, Stanley knew or should have known that the action would have been brought against it, or that there was any mistake in identity.

Stanley's motion for summary judgment is granted based on limitations.

### B.     Wal-Mart's Motion for Summary Judgment

Wal‑Mart's summary judgment motion goes to the merits of Chessmore's case.  Wal-Mart argues that the undisputed facts in the record show that, as a matter of law, Chessmore cannot raise a fact issue as to her claims.  Under Texas law, a negligence claim has three elements: (1) the defendant owed a legal duty to the plaintiff; (2) the defendant breached that duty; and (3) that breach was a proximate cause of injury to the plaintiff.  *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998) (citing *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998)).  Wal-Mart acknowledges that it owed Chessmore the duty a premises owner owes to its invitees.  Chessmore's response does not dispute this.  (*See* Docket Entry No. 34).  The standard for the duty a premises owner owes to an

invitee "simply tailors the traditional test of the conduct of a reasonably prudent person to a specific category of defendants." *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983).

When the claim is based on a premises defect, Texas courts follow section 343 of the *Restatement (Second) of Torts* (1965).  Section 343 defines duty and breach in three parts: (i) actual or constructive knowledge of some condition on the premises; (ii) the condition posed an unreasonable risk of harm; and (iii) the owner failed to "exercise reasonable care to reduce or eliminate the risk." *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992) (citing *Corbin,* 648 S.W.2d at 295).  Wal-Mart argues that the undisputed facts show that it had neither actual nor constructive knowledge of any problem with the exterior automatic door that injured Chessmore. "An invitee must show that a land owner either knew, or after reasonable inspection should have known, of an unreasonably dangerous condition before arguing that the owner breached a duty by failing to take any one of several precautions." *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3-4 (1996). Wal-Mart has presented summary judgment evidence that before and on the date Chessmore was injured, there was no indication that the door was working improperly.

Chessmore argues that Wal-Mart had actual "ongoing knowledge of problems with the doors" because Stanley had been called to inspect and service the doors in November 2006 and in February 2007 had been called to repair the interior doors and had been working on them for "the three days leading up to the injury." (Docket Entry No. 34 at 5-6)**.** Chessmore also points to her own deposition testimony that, after the incident, a Wal-Mart assistant manager said "the doors had been worked on two days before, and they were still having problems with them." (Docket Entry No. 34, Ex. 4, Chessmore Depo. at 47-48).

10

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party and it may not make credibility determinations or weigh the evidence." *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51, 120 S.Ct. 2097 (2000) (deciding a Rule 50 motion but noting that the same standard of review applied to Rule 56); *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 877 (5th Cir. 2003) (relying on *Reeves* in summary judgment context). The record shows that Stanley had been called to Wal-Mart to inspect and service the doors in November 2006 and had reported that work done satisfactorily. In February 2007, Stanley had been called to work on the interior automatic doors because they would not open properly. The record shows that Stanley had repaired the problem and told Wal-Mart that the doors were working properly. On the date of the accident, there was no report of any problem before Chessmore was injured. The issue is whether the evidence of the recent problems with the interior doors, and the statement by the Wal-Mart employee to Chessmore that "the doors had been worked on two days before, and they were still having problems with them" creates a fact issue as to Wal-Mart's awareness that the doors presented an unreasonably dangerous condition.

The record shows that Stanley was called to Wal-Mart a few days earlier because the interior automatic doors were "dragging." (Docket Entry No. 29, Ex. A at 3). In her deposition, Belinda Sandle testified that she thought the interior doors "wouldn't open up." (Docket Entry No. 34, Ex. 6, Sandle Depo. at 18-19). Stanley's invoice states that the doors would not open. (*Id.*, Ex. 3). Mark Gottsponer, the store manager, clarified in his deposition that Stanley was called to repair the interior doors, not the exterior doors that allegedly closed on Chessmore. Gottsponer explained that the problem was that the interior automatic doors were opening too slowly and that problem had been fixed before February 24. (Docket Entry No. 34, Ex. 5, Gottsponer Depo. at 38-39).

11

The undisputed facts show that Wal-Mart had no information that the automatic doors had a problem that made them unreasonably dangerous, even putting aside the absence of any problem with the exterior doors that closed on Chessmore's arm and looking only at the fact that there had been a problem with any automatic doors a few days earlier. The record shows that the problem – an automatic door that opens too slowly – was not a problem that made the doors unreasonably dangerous. And the record shows that Wal-Mart had called Stanley, had the problem repaired, and saw no continued problem on the day of the accident. The undisputed evidence in the record shows no basis to conclude that Wal-Mart knew that the automatic doors had a problem that made them unreasonably dangerous on the date Chessmore was injured.

The undisputed evidence also shows that as a matter of law, Wal-Mart lacked constructive knowledge of any unreasonably dangerous condition in the doors. Stanley had completed its repair work on the interior automatic doors on February 23, stating that the "[e]quipment checks out ok." (Docket Entry No. 29, Ex. A). After Stanley finished, Sandle tested Stanley's work by walking through the automatic doors. When they functioned properly, she signed off on a performance evaluation, giving Stanley a grade of "excellent." (*Id.*, Docket Entry No. 34, Ex. 6, Sandle Depo. at 26-27). The day after that work was February 24, when Chessmore alleges she was injured. Wal-Mart's incident report indicates that the incident occurred at 5:40 p.m. (Docket Entry No. 34, Ex. 1). Before that time, Sandle had already entered through both sets of automatic doors four times: at 8:00 a.m., at 1:00 p.m., at some time between 2:00 p.m. and 3:00 p.m., and again at 5:00 p.m., within an hour of the incident. She stated in an affidavit that she "noticed no problem with the functionality of the doors. Both sets of doors were operating properly each time I walked through the doors." (Docket Entry No. 29, Ex. A, ¶ 6). There is also no evidence that any other customer

or employee reported any problem with the doors throughout the day.  If there was a problem with the automatic doors, it was not readily observable until either just before or when Chessmore went through the doors as she entered the store.  A reasonable inspection would not have revealed any dangerous conditions.  Indeed, under the circumstances, Sandle's walking through the door periodically was a reasonable inspection.  Even if Wal-Mart had ordered a daily, full-scale mechanical inspection, the record reveals that no problems would have been found.  When Stanley returned to investigate Chessmore's claim on April 4, 2007, it found that the exterior doors were "working correctly."  (Docket Entry No. 34, Ex 3 at 4).

The evidence does not give rise to a factual dispute as to whether Wal-Mart was actually or constructively aware of an unreasonably dangerous condition.  Premises owners are not insurers of an invitee's safety.  *See* W. PAGE KEETON, ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 61, at 426 (5th ed. 1984) ("[T]here is no liability for harm resulting from conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care." (footnotes omitted)).  The record shows that Wal-Mart acted reasonably and had no reason to know that its door might malfunction and hit a customer.  It is entitled to summary judgment.

## IV.    Conclusion

This court grants Wal-Mart's motion for summary judgment.  Stanley's motion for summary judgment is also granted.  Final judgment is entered by separate order.

SIGNED on October 5, 2009, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

13